All right, we will call the calendar Richard Dent v. National Football League, number 19-16017. Council thank you for making the trip out for the argument, we're looking forward to hearing what you have to say. Thank you, Your Honor, thank you for having us. I'd like to reserve four minutes. Okay, keep an eye on the clock, I'll try and tell for you. Okay, thank you. Good morning, my name is Bill Sinclair with Silverman Thompson from Baltimore, Maryland. I'm here on behalf of the plaintiff's appellants in this matter. This may be one of the more simple issues that this August panel has ever had to decide. For plaintiffs have pled but a single count of negligence, and as far as I can tell, we're only arguing about one element of that most basic of tort claims, which is duty. And you have two theories, right? Voluntary undertaking or negligence per se? So Your Honor, I do think we have two theories. There was three that were identified, and I spoke with Mr. Schott earlier this week and said that we were abandoning the third, so yes, I think that it's voluntary undertaking and that it's, so the other issue I think is the one that's interesting and I want to talk about it a little bit. And I think it goes to maybe some confusion that's arisen out of what we also may be referring to as dent one, the preemption decision that was issued by this panel a couple years ago. There was discussion in dent one about negligence per se, and there was discussion about what ultimately the plaintiffs might have to prove if they were going to proceed on a negligence per se theory. And the language to me was pretty clear. It was talking about proof and discovery and all those things that come past the pleading stage. But I do think the trial court and the NFL sort of seized on that language to what I would say impose a heightened standard of pleading. I don't understand negligence per se to put forth a pleading standard. I do think we have to put them on notice that we might be proceeding. I don't think it's probably fair to pull the rug out at summary judgment or trial and say, oh, by the way, this has always been a negligence per se case. We just didn't plead that. I do think there has to be some notice. Yes? Well, as the author of that opinion, and I don't mean to speak for my two colleagues here, although they did sign off on it, maybe I can help you out a little bit. You had alleged active involvement by the National Football League in the procurement, storage, and distribution of controlled substances. And that is what led to the language in our opinion that if you can prove that, that the NFL was actively involved or somehow aided and abetted the teams in violating either the Controlled Substances Act, the Food, Drug, and Cosmetics Act, or state pharmaceutical laws, then we think there's a cognizable claim for negligence per se. Not only that, it seems to me that under Count 1 of your cause of action, there are no pleadings here other than a violation of the statutes. I'm not sure that that's correct, Your Honor. Well, give me the cause of action that says there is other than a violation of the statutes. Sure. It is at paragraph... Because I'm going down to Count 1, and I started with 298, and I went down through. So tell me where in those it says anything about anything except a violation of the statutes. I don't... Your Honor, I think you're right. Through paragraph 304, I think you're correct. But paragraph 305, which is at the record extract of 240, says, finally, to the extent the NFL voluntarily undertook a duty apart from those identified above to ensure the proper recordkeeping, administration, and distribution of medications, it breached that duty. So then, as to the general negligence duty, there are none except the violation of the statutes, only if they voluntarily undertook one? I think that... That's the allegation. The allegation is that they, yes. There's no doubt that there's an allegation that they voluntarily undertook a duty, Your Honor. And I think that the evidence that we identified, that we induced in Evans, fully supports that. Well, I'm just trying to make sure, because I looked at your negligence allegations, tried to see if there was any ordinary negligence pled, and there wasn't. It was all about statutory violation. Then I looked here at what you pled in 305, and it says you voluntarily undertook different duties, if you will. But I guess I'm trying to figure out where we're going. Because the last time we were here, it seemed to me that you suggested that the substance of your claim wasn't that the NFL failed to adequately supervise medication, but the NFL distributed and dispensed medication in a manner different than the law. In other words, if we were talking about failing to adequately supervise, you had... You had the CBA, and you were saying, we don't want to get there. It's got to be something that they did specifically. It's not a matter that they failed to adequately supervise it. It's just that they did something where they distributed and dispensed itself. I think that's mostly right. I think that it's a little broader than dispensed and distributed. The language from the panel's decision talked about handling, administration, and distribution. All right. I'll add those other verbs. I'm just trying to make sure we're not back in there, failure to adequately supervise. We are not. No. Absolutely, we are not. I think that to the extent that Denton 1... So at that point, if we're not there, you've got to say something they expressly did or that they were supervising their doing. I agree, Your Honor. I think that to the extent that Denton 1 has an import here today, it is the directive to us to have pled NFL conduct. I think that the operative pleading that you judged in Denton 1 interchangeably spoke of clubs and players and the league. I can guarantee that we were not playing games. It was simply we didn't have a full understanding of what the relationship and the nature of the relationship was between the clubs and the league at the time. I can tell you, I still don't. Really? So where in the amended complaint is the NFL... Do you allege that the NFL undertook to provide direct medical care and treatment to the players? We don't. I don't think that's what we allege, Your Honor. I think that we... I think that to the extent that you can find a duty in this complaint, in the operative complaint, I think it deals with the manner in which the NFL, whether it voluntarily undertook a duty or had a duty, but nonetheless injected itself in the administration of controlled substances, painkillers, and opioids. What we all seem to be referring to is the drugs, the medications. Let me tease this out a little bit because I understood your voluntary undertaking theory to include the promulgation of policies like the Tordahl policy and the conduct of audits of how the teams were storing and distributing and documenting the medical necessity for the distribution. In the face of those audit results, they should have been on notice that the clubs were violating the controlled substances and pharmaceutical laws to the detriment of the players and took no action to stop because of the return to play policy. Is that a fair summary of your theory? It is. I think that this is different than the Good Samaritan laws that the NFL cites. This is not the situation where you're driving down the road. You see a complete stranger drowning in a lake, and you say, should I stop? If I stop, what is the duty I owe this person? What do I do? Those are the Good Samaritan laws that I think the case of the NFL talked about. This is a situation in which there is no doubt. The very opening of this panel's dent one preemption talks about, citing the Williams case from 8th Circuit, that the NFL oversees the entire league. That's what we try to tease out here at the beginning of our complaint with this business plan letter from Dr. Thomas McClellan, who's an associate of Dr. Lawrence Brown. This is a paragraph nine of the currently operative complaint. Dr. Lawrence Brown has been the medical advisor to the NFL for the last 30 years. There's no doubt that he is NFL personnel. Dr. McClellan— Here's what confuses me, counsel. So if you go back to paragraph seven, and then I can give you multiple paragraphs elsewhere, but third sentence of—or let's see, second sentence of paragraph seven says, the NFL has distributed these controlled substances. Is that just a euphemism? Is that an overgeneralization? And then a couple of lines later, let's see, I'm going down to line—I'll go down to—I'll give you line number 21, NFL doctors and trainers. Again, is that just euphemistically? Or are these actually the NFL's doctors and trainers as opposed to the club's doctors and trainers? Your Honor, there is no doubt that the NFL is a separate entity from the clubs. There's no doubt that the clubs are separate entities. Right. I'm trying to figure out who the doctor and trainers are. You said the NFL. That's the adjective that you used. Are these NFL doctors as opposed to— No. So the NFL doesn't have doctors? My understanding is that the doctors are employees of the clubs.  Do you have NFL trainers? No. The trainers are also employees of the clubs. So as you went through Dent, Newberry, Greenhill, Van Horn, Stone, Pritchard, McMahon, Wiley, each one of those has a paragraph in which it is alleged that the NFL's doctors and trainers—that's your phrase, quote, NFL's doctors and trainers. So you're not alleging that the NFL's doctors and trainers gave any of those plaintiffs drugs? Your Honor, I don't think that the NFL has a doctor or trainer. Right. But this is what's confusing. I mean, this appears to be responsive to Dent 1. But if you're backing off of that, then you've over-argued your case. And it seems the district court seized on that, what I'll call conflation of who these people are actually working for. I mean, clearly the league promulgated safety policies, telling the clubs that they had to have emergency room certified doctors and orthopedists standing by to take care of the players who were injured during the game. But that doesn't make them NFL players, or excuse me, NFL employees. I understand. I agree. I recognize that to some extent the operative pleading at issue here falls victim to the second amendment complaint. And again, I promise you, we're not playing games. I've taken depositions at Evans, and I've read all the documents, and I still don't have a good understanding of where the league stops and the clubs start. Well, I've got some. Go ahead. Well, I guess I'm going to follow up on Judge Bybee's question, because there are also allegations here about trust and reliance. I go to Dent, it's 27. I go to Newbury, it's 36. I go to Green, I can name them. But they say they trust and relied on the NFL doctors and trainers, but you're not really saying that. You're saying they relied, trusted on the leagues trainers. We are, Your Honor, but I think it's all part of the story. But part of the story, the thing that I'm worried about is that I've got to find a violation of the statute, and I've got to find a violation of the statute by the NFL. And I've, therefore, after having fined these, I've got to find where did the NFL start and where did the league, where did the league, or where did the club start? And that's why I'm asking you the question. I understand, and I do think it's part of the story. I don't think we can tell the story without it, but I don't think that you have to find a violation. I think that that is one path forward. I think a path forward that this panel identified for a negligence count, if we're going to apply the evidentiary presumption, which is negligence per se, would be to plead that the statutes at issue, what we all refer to as the drug laws, apply to the NFL, and that they violated that. That is a... And that establishes the standard of care that you allege that they breached. That is one way, that is one path forward, Your Honor. I don't think it is the only path forward. I don't think... But isn't that the basis for your negligence per se claim? No, I think that... That's the basis of his negligence allegations. I think it's in part, I think it's in part the basis of our, I think it's in part the basis of, I agree, I agree it's in part the basis of our negligence allegations. But I think that you can look to the Rowland factors that this court, this panel talked about in dent one, and you look to the general character of the activity. I read dent one in that regard, at pages 136 through 138 of the record extract, where it talks about duty. It talks about how duty arises from contract and statute, and it also talks about how duty arises from the general character of the activity. And nothing in what you said there talked about the fact that we had to plead a violation of the laws. What you said there, and what we took to heart, and what I think is right, is that if the NFL or any entity that has somehow involved itself so much in controlled substances, the handling, administration, or distribution thereof, and lacks reasonable care in what they do, then there's a duty. But that is essentially, if we were to apply an analogy to criminal law, an aiding and abetting theory. That the actual breach of the statute was by the team physicians and trainers, but that it was the NFL that was also complicit in aiding and abetting the violation by procuring large quantities of the drugs, overseeing the distribution and storage to the teams, auditing their compliance with the law, but then not taking any action in violation, which we're back to the voluntary undertaking. I mean, it's hard to keep these two concepts separate, in my mind, because they sort of seem unintended. Understood. Now, Your Honor, here's, I think, the bottom line in all this, and I know that my time is getting short. I want to make sure I identify it. We've got plenty of time. You're the only case. Well, I appreciate it, but I don't want to presume that I have more time than I otherwise have. Thank you, Your Honor. Okay. But I think that the bottom line, Your Honor, is this. We did take this panel's directive in Dent 1 seriously, that we had to plead NFL conduct. And I recognize that the currently operative pleading, to some extent, tells a story that at times is interchangeable. And again, it was not done to play games. It was done because it is part of the story, and it's, again, a little difficult to tell because of the opaque nature of the league and the club. Does the NFL have any separate medical employees beyond using club doctors? I understand there's the Physicians Association, I forget the specific title, but those are basically club doctors who serve the entire league on this committee, right? Sorry. Go ahead. Dr. Lawrence Brown? Dr. Lawrence Brown has been the medical advisor for the last 30 years in the National Football League. He has discussed greatly in the complaint, beginning at Record Extract 203, paragraph 161. Is he employed? That's our understanding, is that he is an NFL employee, yes. That he is in Park Avenue in New York, where the headquarters of the NFL is. And that he oversees what has been identified as the NFL Prescription Drug Program. And that has been in place since at least the 1990s. But if, in fact, well let me talk about your assumption. If you say the duty was voluntarily assumed, why isn't that preempted? I mean, the district court adequately talked about that last time. And we said, we're looking very tough at that. And it's only when you get outside of this, where there's direct allegations of somebody doing something, giving something away, doing something, redirecting it, why is it that this is not preempted, this voluntary assumption? I mean, it seems to me that, I mean, I read the SBA, or the CBA. I read the paragraph, the 2011 CBA. The 2011 CBA disclaimed any duty or obligation of either the NFL or the NFLPA regarding diagnosis, medical care, and or treatment of any player. So it seems to me that if I'm going to talk about voluntary assumption, I've got to look at the CBA, and once again, preempted. Yeah, and so I know I'm running out of time, but I'm happy to answer. Well, frankly, I've got to have that answer if you've got more time. No, no, go ahead. I just want to be mindful of my, yes, thank you. Your Honor, I don't think that you have to look, I think it goes back to the analysis of that one. I don't think you have to look at the CBA to determine whether or not they voluntarily undertook the duty. You can look at their own actions that are separate and apart from the CBA. There's nothing about the CBA. Well, but just a minute. If, in fact, the CBA says what they have the duty to do and what they don't have the duty to do, or if the CBA says if they did anything, they have no problem. This says either they've disclaimed any duty. There's nothing to be done there. Why is there any then that you can come in, I mean, the district court said, this has been preempted. I don't, you know, this is the, I mean, this principle applies throughout the law. You say you're an independent contractor, but are you really an employee? You say you don't have a duty, but you act in a different way. What the words on the CBA say, I'm not sure matter all that much. But isn't your response, and I'm really using you as a foil to talk to my brother here. Frankly, he's trying to answer your question. Yeah. Because he didn't think you answered it. I understand. That's my point. That's the bottom line. I understand. But isn't the response to that, regardless of what the CBA says, if the statutes provide a legal obligation, which through my aiding and abetting analogy is binding on the NFL and the clubs breach those statutory standards, they can't contract away liability under the CBA for violating the controlled substances laws. You said it far better than I could. Well, I thought that was your position. Well, I'm glad you've adopted his position. I guess what I'm trying to do is get to the bottom line, not try to take a position here. I read what you have here. Let's take your allegations, 18 of them. Name your best one of those allegations which would suggest that they violated the statutes in doing what they did. Your Honor. That's the only thing you've alleged, a violation of the statute. And it's an assumption of a duty, but violating the statute is what you've alleged. So what did they do? I don't think they violated the statutes, and I don't think we've only pledged that they violated the statutes. I recognize we did plead that they violated the statutes. But where did you plead other than they violated the statute? Paragraph 305. That's the only... And I think that there's also... Undertook a duty apart from those identified? Yes. So is this a reference to the two paragraphs? It looks like it's about 159 to 164, and then maybe 188, which deals specifically with Dr. Brown. So this is the Riker-Tennant-Lombardo-Brown program in which they begin monitoring and auditing. That's the beginning, yes, Your Honor. Okay, so what duty have they violated there? What is it that they've done? I don't think anything they violated there, Your Honor. I think that that sets up how the NFL became involved with the controlled substances... So is this a voluntary undertaking theory? Is that your voluntary undertaking theory? That is in part, yes. That sets the story for the voluntary undertaking, yes. But the problem comes, if you go to voluntary undertaking, then I get back to where I was in the beginning. Because you've already said to the district court and to us, we're not talking about what they knew and didn't get involved in. We're not talking about the fact that they didn't supervise. So what did they do wrong? Your Honor... Just because they do these... I mean, I've got 18 things they could have done. Now I've got another one that you said in 305. What did they do wrong? I mean, that's the problem. You can't say, well, they didn't adequately supervise it. No, I think what they did wrong is essentially what Judge Solomon was talking about with aiding and abetting. I don't think that you can... What does aiding and abetting mean? That sounds good in criminal, but what are you really talking? What did they do to aid and abet? The only thing I can figure out is they didn't adequately supervise. So tell me a different approach. Okay, so what they did is they came in and said, this is how it's going to be run. You're going to provide audits to us every year, and you're going to tell us that you are complying with these federal laws and these state laws. And we're going to tell you how to store these drugs. And we're going to tell you... There's allegations in here that do go to distribution. And we're going to tell you how to safe them. And we're going to tell you that you have to impose this toroidal policy for all of your players. And we're going to tell you that come 2015, we're going to impose this visiting medical liaison program that's going to require you to act in a certain way. And all of those are statutory things they should have been doing. They could have to comply with the statute. Yet when we get to the end of the story, there's nothing to suggest that they violated the statute. All that is to help them do what they're supposed to do under the statute. I mean, I get the bottom line, and I say this with all due respect. It would be remarkable to me to say that you can come in and say that we are going to tell you how to do everything. You're going to tell us that you're doing it totally wrong. And we're going to say, even though we're the ones who have now assumed responsibility for ensuring you're doing this and you're doing it wrong, and you're not doing it the correct way, we get a pass. That's your argument. In a nutshell. I have a very difficult time understanding how to... But it goes one step further, doesn't it? The reason... Maybe this goes to motive. But the reason that they failed to take adequate action in the face of the audit findings was because they had a return-to-play policy. And it was in the league's best interest to maximize television revenue by putting their injured stars back on the field. I appreciate my colleague answering your question. But I can ask just an easy question. And that is, I've got to look at the CBA and find out why. That there's an allocation of duty. And that there's an allocation of why you do and why you don't. And if I have to do that, your argument is preempted. And we shouldn't be having cases like this, which are covered by a CBA, in the federal court system. I understand preemption. I understand that. But where we disagree is I don't think you have to look to the CBA to determine the duty here. Well, but if I... I know you don't want me to look at it. But if the CBA adequately controls what's exactly supposed to happen, and I've got to look there to find it, you're preempted. But you didn't have to look there in the first place. You don't have to look now. If the duty's been assigned and the duty's been taken care of, then that's why we have a CBA. That's why they're not supposed to be in the federal courts. They're supposed to be down doing their thing under the CBA as they contracted to do. Not kind of get around it and come to the federal court system based on a new theory. Well, but I understand. But if the duty's voluntarily assumed, then it obviously cannot be in the CBA. All right. Why don't we hear from the other side? I will give you two minutes on rebuttal. Thank you. And put an extra four minutes on the clock for Mr. Shaw. Set it for 24. May it please the court. Pratik Shaw for APELI, the National Football League. The one thing that I thought we had agreed upon by the time we got to this case, after Denton won, after the revised complaint, and after the briefing to this court and here, is that the one thing that seemed to be clear was that they had to allege that the NFL itself violated some state or federal drug law. And yet, I just heard plaintiff's counsel say, in response to the questions, what's your best allegation? That the NFL itself violated a drug law. Say, we are not alleging that. But here is the first line of their appeal brief to this court in 2015, in Denton won. For decades, the NFL supplied controlled substances and prescription drugs to its players in an amount and manner that violate federal and state drug laws. Here is the first line from its brief to this court this time around. For decades, the NFL directed and controlled the distribution of controlled substances and prescription drugs to its players in amounts and in a manner that violate federal and state drug laws. It's replete throughout their arguments last time to this court, to their revised complaint, in this court's opinion in Denton won, where at 1121, accepting their representation of their argument, this court said, quote, the merits of plaintiff's negligence claim will require the players to establish that relevant statutes apply to the NFL and that NFL violated those statutes. Mr. Shaw, I'm having the same problem that Mr. Sinclair alluded to. And that is, the NFL is an unincorporated entity, an association of the member clubs. And with the exception, apparently, of Dr. Lawrence Brown, the only doctors and trainers that are in play here are employees of the individual clubs. Yes. And the Physician Society that advises the league is made up of those doctors. Yes, Your Honor. And those are the doctors that have promulgated these medical rules and regulations, the Toradol waiver. They're the doctors that have commissioned the studies of drug use and so on. And I'm having a very difficult time drawing a line between the NFL as a completely separate entity, as if it were a corporation, and these wholly independently owned and operated franchisees.  Can you help me understand that? Sure, Your Honor. Because it seems to me the district court and we have struggled with this interrelationship between the league and the clubs, which makes the allegation that the NFL actually was involved in the distribution of controlled substances more credible than I think you're willing to concede. Sure, Your Honor. I think the lines in this sort of case are clear. The team doctors and club doctors that they allege prescribe the drugs or over-prescribe the drugs, those are employees of the team and clubs exclusively. They do not have a relationship to the NFL. Their complaint, every allegation in their complaint about administering drugs, dispensing medications, everything is the relationship between a club doctor and his patient, the player. But didn't the NFL actually procure in large quantities, I assume because they got a price break, controlled substances which were then delivered to the team? No, Your Honor. I thought there was an allegation to that. That was the allegation in the first time around in their second amended complaint that this court pointed to in its one opinion. That allegation is dropped out of the third amended complaint. And remember what happened between the second and third amended complaint is there was extensive discovery in the related Evans litigation. They took over two dozen depositions of team doctors, club doctors, and the NFL, what they say are the two key NFL personnel, Dr. Brown and Dr. Pellman. They took over two dozen depositions, including nine club-employed doctors, 14 club trainers, and those two NFL personnel. After all of that, they don't have a single allegation of any NFL directive to any club doctor, to any team trainer to prescribe drugs in a manner that's inconsistent with federal and state law. Judge Alsip gave them, took pains to give them every opportunity being faithful to this court's dent one opinion. At the hearing, I suggest, I would recommend the court look at the supplemental excerpt of record 48. This is from the district court hearing on remand, where he asked point blank, just as Judge Smith did today, point blank asked plaintiff's counsel, give me your best factual allegation of any NFL personnel, not the club doctors, not the team trainers, any NFL personnel acting in violation of the drug laws or issuing a directive that would be in violation of the drug laws. At supplemental excerpts of record 48, 49, the plaintiff's counsel, the best allegation after filing a third amended complaint, which was supposed to be their, quote, best and final complaint after extensive discovery in Evans, 90 pages, what he came up with, this is his response, is the NFL was aware of the problems by team club doctors and club physicians and failed to remedy it. That was their best allegation. And what Judge Alsup said, well, that's the theory that you disavowed before the Ninth Circuit, that they took inadequate steps to stop the clubs and team doctors from violating. I was just discussing that with Mr. Sinclair. The theory was that the audit reports showed that the clubs were not in compliance, but the NFL took no action to cure the noncompliance. That was the theory back in 2015 that Judge Alsup thought he was ruling on in the preemption said that this is, that look, the NFL didn't take enough steps to stop the misconduct by club and team doctors. If the explanation for that is the motive that I picked up from their complaint, the return to play policy, then why can't the NFL be complicit in the violation because it was in their best interest under the plaintiff's theory to keep these injured players back on the field by whatever means necessary, doping them up as much as possible so that they can continue to play. A couple of responses there. First of all, this is from their brief to this court. The first time around, when we thought that was the theory, that it was that the NFL was failing to intervene or taking inadequate steps, their audits weren't good enough, they weren't taking enough proactive steps based on the information that they had. This is what they told this court. The district court analyzed plaintiff's complaint under a fundamental misperception. The individual clubs mistreated their players and the league was negligent in failing to intervene and stop their alleged mistreatment. They disavowed that theory and said that their theory was in fact no, it was the NFL itself that was violating the drug laws, engaging in illegal conduct. That's what this court said they had to allege and he admitted here that they do not have any allegation in their complaint that the NFL itself, directly or indirectly, violated the state and federal drug laws. That is what they have to show. The fact that there may have been information that the NFL had awareness, and look, the NFL, their complaint is replete with all sorts of stuff that the NFL was doing to try to foster compliance with the clubs. Their theory is the NFL sort of didn't put forth its best effort or intentionally had lax policies so that the clubs and team doctors could surreptitiously do this. That is a failure to intervene, inadequate supervision theory. But why isn't that a jury issue? In other words, if the plaintiffs can prove that these policies in essence were window dressing and were essentially paper tigers in protecting the health of the players, then why can't the NFL be liable under a negligence theory for failing to take adequate steps? Well, because, Your Honor, that's the theory they disavowed. And this court said in order to show negligence, as a matter of law, the conduct has to rise to the level of a violation or federal or state law. There is no dispute between any of us here today that simply doing that, the paper tiger policies, would not violate, the Federal Controlled Substances Act or the Federal Drug and Prescription Act or any state law. They agree with us here. They don't have an allegation here that that sort of conduct would violate the law. So as a matter of law,  they could prove that to a jury, as implausible that is based on the allegations, if they could prove that to a jury, as a matter of law, that would still not show any illegal conduct by the NFL in violation of federal or state drug laws. You would agree that if the team owner told the team doctors and trainers, I don't care what law you have to violate, I want these players on the field, that that would be a violation of the controlled substances laws, which could give rise. By the team owner, not by the NFL. So I'm back to my confusion between the NFL entity and the teams. If it's the NHL, which is made up of the member clubs and controlled by the owners of the clubs, in essence establishes this return to play policy, why isn't that the same thing as if the team owner tells the doctors and trainers, do whatever it takes? Your Honor, this would be a completely different case if they had an allegation that any NFL personnel, and the NFL has lots of personnel, don't labor under the misimpression. But there is in existence a return to play policy, is there not? Or is it just the plaintiff's characterization of what was going on? Complete characterization. There is no document of return to play. They use the capital letters business plan? There is no document. And don't labor, Your Honor, please don't labor under the misimpression that the NFL is simply composed of the teams and doesn't have its own personnel and all that. It has its own personnel. If they had actually alleged that NFL personnel had issued a memo, directive, to team doctors and trainers or team owners, hey, make sure your players stay on the field even if you have to push the boundaries of prescription. Are the team owners that are going to profit from that policy if the television revenues are maximized by marquee players? Your Honor, they brought a suit against the teams. They did, and it's the Evans litigation. I understand, and that's not before us, and I understand a different panel of this court affirmed the dismissal. Exactly, and these are distinct legal entities. This is not some fuzzy line. A distinct legal entity, an unincorporated association of team members, isn't that the legal characterization of what the NFL is? Your Honor, yes, but they have distinct legal entities. Even plaintiff does not allege that the NFL You heard them here today. They're not alleging violating federal state laws. The violations are being done, as they allege it, by the team doctors and trainers, the only way to connect it. There is no corporate document that incorporates the National Football League, is there? Your Honor, there is not a separate incorporation, but it is its own entity. They cite tons of emails in their complaint, memos from NFL personnel. It's its own entity, but it is part and parcel of the way that the club owners operate the football league. Well, Your Honor, their theory all along has been that it is the NFL directing the team doctors and clubs. That's what they sold this court on the first time. Well, what I'm suggesting is almost a, if it was incorporated, a piercing the corporate veil theory of liability that, yes, we have this unincorporated entity called the National Football League, but it's really the team owners themselves acting in concert and they all have a common motive to maximize revenue. Your Honor, this litigation has now been going on six years. We're on our third amended complaint. Judge Alsup has given them every chance to plead what they said they could plead. That theory they have never articulated. It's not pled, it's waived, it's forfeited, it's just not before this court. That would be a very different suit had they tried to plead that. They clearly have not pleaded that. They've brought two different suits, once against the teams and one against the NFL because they are distinct entities. That's been their theory all along. Two different suits seeking two different liability. They failed against the teams. Now all they've got left is you need to tie this to some illegal conduct by the NFL. That's what they told this court. That's what this court held at 1121. Judge Alsup, faithful to that, gave them every chance to do that. Remember here, under Iqbal and Twombly, they have to give plausible allegations. This is what Iqbal says. Plausibility is a context-specific task that requires a reviewing court to draw on its judicial experience and common sense. Judge Alsup has lived with this case. He saw the discovery in Evans. He's asked them multiple times, point me to these allegations. They haven't been able to point him to the allegations. He hasn't been able to point you to allegations today under very direct questioning. There just isn't any plausible allegations here that the NFL committed illegal conduct. I hesitate to interrupt your answer to my colleague's question, but there are a couple of questions that I have. Doesn't the allegation that the NFL required players to sign the Toradol waiver show that the NFL was involved in the distribution of the Toradol? Well, a couple things about that, Your Honor. It doesn't show any involvement that would be in violation of federal and state drug laws, which of course is the linchpin of the negligence claim in violation of federal and state drug laws. If you look at that Toradol waiver, which I think is attached as Exhibit B to the complaint, you'll see a couple things. One, that's a document between a team doctor and the player, not between the NFL and the player. I think that one is San Diego Chargers team and the player. The second thing is what that Toradol waiver is, if you look at it, it's an informed consent document. So it's of piece with all of their other allegations where the NFL was allegedly trying to enhance compliance with the law, provide informed consent, make sure that they were adhering to the policy with respect to drugs, auditing, reporting how many drugs they've used. All of that is part of their same allegations that the NFL, they say, was inadequately monitoring. Go further. So the NFL requires the player to sign the Toradol waiver? Not to interrupt you, Your Honor, but it doesn't require the waiver. If they want to get Toradol, then they have to sign the document. And the NFL next requires the teams to use independent doctors in away cities to dispense drugs. Now, doesn't that show the NFL is then directing the distribution of the drugs? It shows, Your Honor, that the NFL is encouraging compliance with the drug laws because what happened is, the prior practice, as the complaint alleges, was the team doctors would take the controlled substances with them to away games. The DEA then came and said, that is not a kosher practice. And so what the NFL, they allege, did in order to enhance compliance with the DEA directive was make arrangements so that there would be a doctor at the home stadium on site that could provide the medications to the visiting players. The reason I picked out those two, it seems to me the allegations that they make, if at all, suggest a control simply because the NFL was requiring the players to do something or requiring the teams to do something and therefore may have arisen to an independent duty. That's why I asked the question. Right. So, Your Honor, a couple things. Once again, those, to the extent they were requirements, and we would dispute that characterization, to the extent they were requirements, which I have to accept as true. So let's accept that as true. That is not anything that would be in violation of federal and drug state laws. That is conduct meant to enhance compliance. Now, maybe they're alleging they didn't enhance compliance well enough, they didn't go far enough, they weren't aggressive enough in ensuring compliance. They didn't take adequate steps to intervene and stop the illegal conduct. But that's, again, the theory that they explicitly disavowed. And I've read you from their brief the last time, the brief this time in front of Judge Alsip, time and time again, judicial estoppel to the nth degree, that they've disavowed that sort of theory. And so... Would you read the statement from their current brief one more time? Sure. So, in this brief, they say, and I just read you the first line, for decades, the NFL directed and controlled the distribution of controlled substances and prescription drugs to its players in amounts and in a manner that violate federal and state laws. That is their theory throughout their complaint. And it's because of what they told the court this last time. Now, that's not entirely the theory that I thought that they were going after. So I heard Mr. Sinclair point to paragraph 305 to talk about the voluntary undertaking. And the case that I have in mind is the Water Polo case, 2018, Mayo, in which we didn't find that there was a violation, that the league was violating some federal or state law. But it voluntarily undertaken a responsibility towards the players and then failed to come up with an appropriate protocol. The paragraphs that seem to me to support paragraph 305 begin at about, I think it's paragraph 159, it's about paragraph 159 through 182, where they start naming the doctors, the employees of the NFL, who engaged in certain policies and conducted certain studies and then made recommendations to the clubs. Now, aside from the question as to whether any of that would have violated a federal or state law, why couldn't that be characterized as a voluntary undertaking by the NFL that was inadequate within the meaning of our decision in Mayo? So I guess a couple of responses. First, I think that theory is a stop because that is a theory in which they're saying the NFL took measures, audits, all of these things to stop it, but didn't do a good enough job doing it. That's what that voluntary undertaking theory is. They're saying it's not about violating the statute, it's that they took steps, but they were inadequate to stop the problem. That is the theory that they disavowed before this court the last time around, and that's from the excerpts of their 2015 briefs that we've quoted in our brief and that I've read you here today. They specifically say we are not, our theory is not, they called it a fundamental misperception, in fact, of their theory, that it's about... But they had an opportunity to file an amended complaint. They may have altered, they may have had second thoughts about that, especially after they saw an opinion. Sure, but that's where judicial estoppel comes in. As this court said, and this is reading from dent one, as we read the complaints, the plaintiffs are not merely alleging that the NFL failed to prevent medication abuse by teens, but that the NFL itself illegally distributed controlled substances... The trick in that sentence was not merely. So once we get rid of the second part of it, which they've now disavowed, that they're not telling us that the NFL employed doctors who preside, then we have to go back to the not merely. That they are alleging that the NFL undertook certain responsibilities towards the players short of actually dispensing medications. Right, but the reason why I think to do that at this stage is because what the court said in dent one is, quote, with that reading of the complaint in mind, we now analyze the negligence claim. So it did not evaluate Judge Alsup's preemption decision under that reading, which is the reading that Judge Alsup said that what they're really doing is talking about failing to stop the teams from doing clubs. So they got this court to not apply the preemption theory, not do the preemption analysis of that theory. No, you don't have to look at the collective bargaining agreement to see who had the duty to do what. Who had the duty to provide the notices? Who had the duty to do the audits? Who had the duty to make sure everything was on the up and up? They said, no, you don't have to look at the collective  That would only come in if we were alleging a failure to take inadequate steps and intervene. Instead, we are alleging illegal conduct. And what this court said is, with that reading of the complaint in mind, we now turn to the question of whether plaintiff's negligence claim is preempted. That's why the judge gave them a chance to clarify all of this in a third amended complaint, and that's the operative complaint. I'm not sure the estoppel really works here as it might in some other circumstances. But your second argument, I guess, is that the voluntary assumption claim would require us to analyze the CBA. What is that argument? Because he suggests, it doesn't matter what the CBA says, if you undertake the duty, you're in. Right. Well, Your Honor, now we're back to Judge Allsup's 2015 opinion that this court never reviewed on that theory. What Judge Allsup said is, if it is a failure to intervene or take inadequate steps theory, well then, of course, it matters who has the duties over that. In a collective bargaining agreement, the league and the teams divvy up the duties on medical care. Say, you know, we are responsible for these things, the league is responsible for other things. So, of course, if you're evaluating whether someone is negligent apart from statutes, right? In dent one, it was, oh, well, the statutes trump everything. But if you're putting the statutes aside, well then, of course, to decide whether someone acted consistent with their duty, one would want to know in the collective bargaining agreement who had the responsibility over that subject matter. There would be a dynamite argument if we were faced with the medical malpractice claim. But that's not the claim that the plaintiffs are pursuing. So why do we need to look at the collective bargaining agreement if, notwithstanding their disclaimer of liability for treating the players, the NFL did something else, which was to commence audits, to promulgate policies, and then failed to take adequate steps in the face of findings that the clubs were violating the statute? Well, I think this goes back to the answer about the Mayo case that Judge Bybee raised. In that case, which, again, is a youth water polo league, doesn't involve sophisticated, collectively bargained entities like we have the players associated in the NFL here. But what it required in order to trigger liability was an increase in the risk of harm from the voluntary undertaking. That's what Mayo sells, an increase in the risk of harm. The NFL proactively doing audits and compliance methods, even if they were insufficient, as they allege and didn't solve the problem, that didn't increase the risk. That ought to be a jury question, it seems to me. If they've alleged that the NFL undertook studies and enacted policies, and there's any chance that any of that increased the risk, perhaps by suggesting cover to the clubs, or that there was no problem since the NFL hadn't hollered about anything, then they may have increased the risk to the players. And that seems to me that that's better reserved at least for summary judgment or perhaps for a jury. Well, Your Honor, I think that's far afield from what the complaint that they wrote and what they focused on and what they've briefed all along, both in front of Judge Alsup and both to this Court. After having extensive discovery, remember, in the Dent case, that that is what they're left with. Even if you don't think it's judicially estopped or waived, it still runs into the... It runs smack into the 2015 Judge Alsup preemption opinion that this Court never reviewed based on their representation that they were no longer making that argument to this Court. So it runs into estoppel, collective bargaining, doesn't meet the Mayo test, which is fundamentally distinguishable because that's a youth water polo league. Of course there may be duties that someone takes on when you're talking about children and supervising them. This is a collectively bargained, sophisticated enterprise where they have bargained for an intricate level of health care protections, player protections, all of that. None of that has been examined because of the way they've pled this case. Okay. I think we have your argument in mind. You're 3 minutes over the 24 minutes I gave you. Sorry, Your Honor. Thank you. Let's give Mr. Sinclair the final word. Thank you, Your Honor. Just a few points, Your Honor. I only have 2 minutes. First, I think Judge Bidey is correct. I'm not sure that judicial estoppel applies here. My understanding of pleadings is that once we got to the 3rd amended complaint, it resets everything. It's the tabula rasa. It's a risk we run by putting new allegations in. What's your best voluntary undertaking theory? The best voluntary undertaking theory is that the NFL put in place a program to administer. Administration is the word, and I was going to get to this, Your Honor, that we use throughout the complaint to administer this program with regard to how drugs... What program? I can't remember if Mr. Shaw said it or if the Court said it, but there is no document that says business plan. I agree with that, Your Honor. But what there is is a document that was produced to us during discovery that starts at paragraph 9 of our complaint that talks about... It was produced to us in the Evans litigation, and I couldn't have said it any better in coming up with a theory for the business plan and why this is the way it is. And this is written by Dr. Thomas McClellan, who we understand to be NFL personnel, and the most important language in that is in paragraph 11 where he says, It is in the players, the teams, and the league's reputational and financial interest to use analgesic medications for pain relief. These incentives and the nature of the sport combine to make opioid and other pain medication usage much more prevalent in the NFL than in virtually any other industry, population, or endeavor. Again, going to the uniqueness of the situation I think Judge Tallman has been talking about. And it finishes with the one sentence I would want you to focus on. This is an NFL personnel saying this really means there is shared responsibility and joint culpability for this problem. This is an NFL personnel saying shared responsibility. Responsibility to me is duty. Culpability is breach of that duty. And the other thing I would point to, Your Honor, and this is what I would have ended on... You can end on. ...is an email from the doctors. We've gone back and forth about the league and the doctors and this is the doctor's own language. This is from Dr. Yates who was president of the physician society for a long time who was deposed and this is at paragraph 217 of the record extract. And this is a direct quote. He says, In order to solve the NFL DEA dilemma, we all need to work together and get along. None of us are immune from scrutiny. Trainers, physicians, advisors, Park Avenue management, and we all know what that means, that's the NFL, and so on. As I've said before, to date there has not been a constructive solution provided by the home NFL office other than the meet and greet with the DEA and the subsequent legal conference calls. The information to date to the society is one of good luck and you are on your own to decide how to adhere to the law. We are here because of our association with the NFL. Thank you, Your Honor. The case just argued is submitted. We'll get you a decision as soon as we can. Thank you again for coming out to argue.
judges: Tallman, Bybee, N.R. Smith